# CHARLESTON.

WILSON v. WIGGIN.

Submitted January 6, 1914.   Decided January 27, 1914.

1. SALES—*Implied Warranty.*

In the sale of lumber of a specified quality and grade, executory for future delivery, the buyer having no opportunity for inspection but relying on the seller to select, there is an implied warranty that the lumber furnished shall be of the quality and grade specified. (p. 562).

2. SAME—*Set-Off and Counter Claim—Action for Price—Breach of Warranty.*

In case of a breach of such implied warranty the buyer, though he has not returned or offered to return the property, or notified the seller of its defects, may plead the breach in recoupment of the purchase price when the seller sues therefor.   (p. 563).

3. APPEAL AND ERROR—*Ground for Reversal—Instructions—Equity.*

If on the trial of an issue out of chancery an instruction is given which is plainly erroneous and prejudicial, a decree based solely upon the verdict into which the error and prejudice enters, and not upon a consideration of the chancery record independent of the verdict, must be reversed.   (p. 564).

Appeal from Circuit Court, Raleigh County.

Suit by H. L. Wilson against H. D. Wiggin.   From decree for plaintiff, defendant appeals.

*Reversed and Remanded.*

*File & File,* for appellant.

*T. N. Read,* and *A. A. Lilly* and *J. E. Brown,* for appellee.

ROBINSON, JUDGE:

The suit is one in equity, on an attachment.   Plaintiff seeks to recover from defendant a balance of purchase price

for lumber sold and delivered. The sole ground of equity cognizance is the attachment of the property of defendant— a non-resident.

The contract on which the claim is based is one whereby plaintiff agreed to furnish defendant during the year 1909 one million feet of mountain poplar lumber, log run of plaintiff's mill, at stipulated prices for the different sorts. Defendant claims that some of the lumber furnished him was not of the quality and grade that the contract called for, and that by reason of his right of recoupment in this behalf he owes plaintiff nothing.

The following issue was formulated in the suit and tried by a jury: "What amount, if any, is due by the defendant to the plaintiff upon his demand set up in his bill filed in this cause deducting from his demand the damages, if any, that the defendant may have sustained by reason of a breach, if any, by the plaintiff of the contract between the parties for one million feet of lumber and set up in the pleadings of this cause." A verdict was returned for plaintiff for the full amount claimed by him. Upon that verdict alone the chancery court entered the decree complained of.

No question as to the propriety of directing the issue out of chancery is raised. We are not called upon to decide whether the record justified the direction that the issue be tried by a jury.

Defendant submits several assignments of error relating to matters in the cause preceding the trial of the issue, all of which are plainly untenable and demand no discussion.

The trial court admitted in evidence before the jury the several letters constituting the contract between the parties. We do not find, as assigned, that the court erred in holding that the first two letters passing between the parties constituted the contract; for the record discloses no such holding. The letters were all properly allowed to go before the jury, as evidencing a clear and unambiguous contract in the light of the situation and surroundings of the parties.

The assignment that it was error to overrule defendant's motion to set aside the verdict on which the decree rests, is meritorious and must be sustained. The jury were misdi-

rected by an instruction given for plaintiff over defendant's objection. The instruction was virtually a peremptory one that they should find for plaintiff. Out of the conflicting evidence on the trial, there was evidence tending to support defendant's claim of recoupment, at least to a partial extent. But the instruction indeed forbade consideration of the same since it was not controverted that defendant did not return the lumber. The instruction reads: ''The court instructs the jury that if they believe from the evidence that the plaintiff sold and delivered to the defendant f. o. b. cars at an agreed point or points of delivery in North Carolina, the several cars of lumber mentioned and described in the statement and account filed in evidence delivering them under a contract with said defendant, and that afterwards, and in due course of business and transportation the said defendant received said various cars of lumber at their destination, either in person or through some other authorized agent or assignee, and that said defendant resold the said lumber to third persons, or himself, retained said lumber, and in course of his business used it or delivered it to his customers, and put it beyond his power to return said lumber to the plaintiff, and did not return the same to the plaintiff but used it in his business as a wholesale lumber dealer, and collected from his customers the purchase money thereof in whole or in part, and without the consent of the plaintiff then such acts would constitute an acceptance of said lumber, and the defendant cannot after such resale and acts, if such occurred, be then heard to complain of the quality or grading of said lumber.''

This instruction by no means embodies the law applicable to the contract which existed between the parties. The lumber was to be of a certain quality and grade. The sale was executory for future delivery, by separate shipments from plaintiff's mill in North Carolina to defendant or his various customers at Boston and other places in the North. Those shipments were to be in such amounts and at such times as defendant should direct. The contract did not contemplate that defendant should inspect the lumber before delivery by shipment. Under the contract the circumstances were such that

the buyer necessarily relied on the seller's judgment to select, and not his own. There was then an implied warranty by plaintiff that the quality and grade of the lumber shipped by him should be the same quality and grade described in the contract. "There is in America an implied warranty of *identity*, viz., that the article shall be of the kind or species it purports to be or is described to be; that is, that the article delivered shall be the same thing contracted for." Benjamin on Sales, (7th Amer. Ed.), page 677. "Where the goods are sold 'by description,' and not by the buyer's selection or order, and without any opportunity for inspection, there is ordinarily an implied warranty, not only that they conform to the description in kind and species as before stated, but also that they are 'merchantable;' not that they are of the first quality or of the second quality, but that they are not so inferior as to be *unsalable* among merchants or dealers in the article; *i. e.* that they are free from any remarkable defect. In such sales the doctrine of *caveat emptor* does not apply. This is especially true where the vendor is the manufacturer, or the sale is executory for future delivery." Benjamin on Sales, page 685; *Hood* v. *Bloch*, 29 W. Va. 244.

That defendant may show the breach of the implied warranty and the amount of loss to him arising therefrom, in defense of the suit for the purchase price, even though he did not return or offer to return the shipments that were not up to the contract standard, is certainly well established. "Where the goods delivered to the buyer are inferior in quality to that which was warranted to the vendor, the buyer has the choice of four remedies:—    *    *    *    *Thirdly.* "If he has not paid the price, he may plead the breach of warranty in reduction of the damages in action brought by the vendor for the price." Benjamin on Sales, sec. 894; *Baker* v. *Oil Co.*, 7 W. Va. 454. "In case of a warranty, direct or implied, where the article purchased proves defective or unfit for the use intended, the purchaser may, without returning it or offering to return it, and without notifying the vendor of its defects, bring his action for the recovery of damages; or if sued for the price may set up and have such damages allowed to him, by way of recoupment, from the sum

stipulated to be paid.'' *Fisk* v. *Tank,* 12 Wis. 276; *Day* v. *Pool,* 52 N. Y. 416; *Vincent* v. *Leland,* 100 Mass. 432; *Eastern Ice Co.* v. *King,* 86 Va. 97; 35 Cyc. 441; Tiedman on Sales, sec. 197.

Since the decree is based wholly on the verdict, and not upon a consideration of the chancery record generally, the plain error which controlled the verdict has been carried into the decree. We can not, therefore, say that the chancellor found from the record that the verdict was right regardless of any error that was committed at the trial of the issue, if indeed the record would have justified a finding to that effect. *Repass* v. *Richmond,* 97 Va. 508.

The decree will be reversed, the verdict of the jury set aside, and the cause remanded to be further proceeded in according to the rules governing courts of equity.

*Reversed and Remanded.*