MRS. H. H. BALLENGEE

*v.*

JAMES C. WHITLOCK, *et al.*

(No. 10483)

Submitted January 27, 1953.　Decided March 10, 1953.

*Clay S. Crouse* and *Scherer, Bowers* and *File,* for plaintiff in error.

*Harold B. Eagle,* for defendants in error.

LOVINS, JUDGE:

This is a proceeding by notice of motion for judgment brought in the Circuit Court of Raleigh County by Mrs. H. H. Ballengee against James C. Whitlock and Beulah Whitlock to recover the sum of $2300.00. The gravamen of the action is that the plaintiff had paid the defendants the sum of $2300.00 as part purchase price of a house and tract of land situate in Summers County, West Virginia.

The jury made two reports to the court, each purporting to be a verdict. The last report made by the jury was treated as a verdict and a judgment of *nil capiat* was entered thereon. The plaintiff prosecutes this writ of error.

The plaintiff in her notice of motion for judgment substantially describes her cause of action as arising upon an implied contract for money had and received by the defendants. The defendants filed a counter affidavit denying the right of the plaintiff to recover anything and likewise pleaded the general issue orally, which plea was accepted without objection and made a part of the record. Defendants also filed a special plea which is entitled a plea of recoupment, but is really a plea of set-off and counter claim, as will be hereinafter shown.

In their plea of set-off and counter claim, the defendants assert they are entitled to recover $3200.00, balance due on purchase price of the house, land and personal property and an additional sum of $1167.80, which is made up of interest on the balance of $3200.00 from November 17, 1948 to May 21, 1951, taxes levied on the property, insurance premiums for insurance on the house and the cost of repairs and improvements. Defendants also, in their plea of set-off and counter claim, give the

details of the purchase and sale of the house and furniture at the price of $5500.00 and admit that the plaintiff has paid them the sum of $2300.00 on the purchase price, and prayed judgment for the sum of $4367.80.

The plaintiff then filed a writing entitled, "Plaintiffs' Plea of the Statute of Frauds to the Defendants' Plea of Rocoupment Filed Herein". The writing so filed by the plaintiff is in fact a special replication alleging that the contract described in the defendants' plea of set-off and counter claim was an oral contract for the sale of the land and is therefore unenforceable under the applicable statute.

According to the plaintiff's testimony, which is corroborated by her husband, H. H. Ballengee, the plaintiff had a conversation with defendants in the kitchen of the Willis Hotel at Beckley, West Virginia. The result of this conversation was that the plaintiff agreed to purchase, and defendants agreed to sell, a house and tract of land situate in Summers County, West Virginia, for the price of $3500.00, which did not include the furniture in the house. Plaintiff's husband, according to his evidence, contemplated selling another piece of real estate situate near Beckley and buying the land and house of defendants. The husband testified that it was not desired to purchase the furniture at any price.

The defendants testified, in which they are corroborated by their son and the mother of the female defendant, that the oral contract between the plaintiff and defendants was that the plaintiff was to purchase the house, lot and furniture for the sum of $5500.00. The defendants testified that the contract was made in a room which they rented from the plaintiff. Plaintiff and defendants both agree that the contract of sale and purchase was oral.

Pursuant to whatever understanding was had, the plaintiff on November 17, 1948, gave the defendant a check for $2160.00 marked, "For payment on house &

lots." Thereafter, on or about the 21st day of February, 1949, plaintiff paid the female defendant the sum of $140.00, took a receipt reading as follows: "Feb. 21-49 Received of Mrs. H. H. Ballengee $140.00 One Hundred Forty and 00/100 payment on house and lot. Mrs. J. C. Whitlock."

The male defendant testified that he had not refused to give the plaintiff a deed for the property, and, in substance, said that about a month before this action was started, he had a conversation with plaintiff. In that conversation the plaintiff asserted that there was a balance of about $1200.00 due on the property. The male defendant at that time denied that the amount of the balance due on the property, as asserted by plaintiff, was correct, but that if the plaintiff wanted to "go on and take the place, to get $3500.00 to me and I would make her a deed the next day to the place, * * * ." At the time of this conversation, the plaintiff objected, noting that Whitlock had raised the price claimed by him in the sum of $300.00. It will thus be seen that the plaintiff's testimony and that of the defendants, are in direct conflict, both as to subject matter of the contract and the purchase price.

The plaintiff never had possession of the real estate or the household furniture. Defendants, at all times since the inception of the negotiation between them, were in possession; but testify that they were holding it for the plaintiff.

The court refused a peremptory instruction offered by the plaintiff, gave the plaintiff's instruction number 2 without objection and overruled defendants' objection to plaintiff's instruction number 3. The defendants tendered three instructions, two of which were refused and one given. Instruction number C given by defendants, submitted to the jury the following questions: (a) whether the plaintiff and defendants entered into a contract to purchase real estate for the sum of $5500.00, (b) whether there was a meeting of the minds between

the plaintiff and defendants, (c) whether the defendants were "ready, willing and able to fulfill the provisions of their contract with the plaintiff upon the plaintiff completing the payment of agreed purchase price * * * ", and directed that in the event they found for the defendants on the above questions, that the jury should return a verdict for the defendants and against the plaintiff.

The jury having heard the evidence, instructions and argument of counsel, retired to consider their verdict and after a time, returned into court and requested that the instruction be re-read, which was done, and the jury again retired. After some time had elapsed, the jury returned into court and made the following report: "We, the jury, find for the defendants in the sum of $5500.00, less the sum of $2300.00, already paid by the plaintiff. (Signed) H. Wayne Mason, Foreman."

The court refused to receive the above report as a verdict and instructed the jury that under the instructions given by the court, they could not "return a verdict for any sums of money in favor of the defendants, but could return a verdict for the plaintiff for a sum of money or a verdict for the defendants * * * ." Thereupon, the court directed the jury to further re-consider the verdict. Apparently, the jury retired from the room and after a time, returned into court with the following report: "We the jury find for the defendants. (Signed) H. Wayne Mason." The court received the last report as a verdict and entered the judgment herein complained of by plaintiff.

A number of errors are assigned by the plaintiff as grounds for reversal of the judgment of the trial court. We think, however, that the assignments of errors presents the following questions: (1) Was it error for the court to refuse to accept as a verdict the first report of the jury? (2) Is the plaintiff entitled to recover the money paid by her voluntarily? And, (3) Did the court err in refusing proper instruction and giving improper instructions?

Prior to discussing the questions above stated, we advert to what seems to be a misapprehension as to the special plea filed by defendants, entitled a Plea of Recoupment, and the replication filed by the plaintiff setting up the statute of frauds as a defense to the demands made by defendants in the special plea above mentioned.

The special plea filed by the defendants is actually a plea of set-off and counter claim. An examination of such special plea shows that the purpose is to recover a judgment over against plaintiff. No judgment over may be had by way of recoupment. *Tie & Lumber Co.* v. *Flannigan,* 77 W. Va. 162, 165, 87 S. E. 161. See *Clark's Cove Guano Co.* v. *Appling,* 33 W. Va. 470, 10 S. E. 809; *Case M'f'g. Co.* v. *Sweeney,* 47 W. Va. 638, 35 S. E. 853. For the functions and limitations of the plea of recoupment and that of set-off and counter claim, see Code, 56-5-4, 5, and 6; *Logie* v. *Black,* 24 W. Va. 1; *Orrick* v. *Dawson,* 67 W. Va. 403, 68 S. E. 39; *Bowling* v. *Walls,* 72 W. Va. 638, 78 S. E. 791; *Pulp and Paper Co.* v. *Whitmore,* 89 W. Va. 622, 109 S. E. 722; *Hardware Co.* v. *Phillips,* 109 W. Va. 109, 153 S. E. 147. The special plea here considered is actually a plea of set-off, since it seeks a judgment over against plaintiff and in favor of defendants.

The pleading filed by plaintiff setting up Code, 36-1-3, is a special replication and not a plea.

The contract on which the replication is founded is voidable under the provisions of the applicable statute reading in part as follows: "No contract for the sale of land, * * * shall be enforceable unless the contract or some note or memorandum thereof be in writing and signed by the party to be charged thereby, or by his agent. * * * " Code, 36-1-3. If there has been part performance of a contract for the sale of real estate, such contract may be enforced. But, "Mere payment of the purchase money by the vendee not so signing is not sufficient part performance to render the agreement enforcible against him." *Summers* v. *Hively,* 78 W. Va.

53, 88 S. E. 608; *Cottrell* v. *Nurnberger*, 131 W. Va. 391, 409, 47 S. E. 2d 454.

Admittedly, there was no written agreement or memorandum for the sale of the land owned by the defendants and intended to be purchased by the plaintiff. True there was a check given by the plaintiff to the defendants having thereon, "For payment on house and lots." Such check is signed by the plaintiff only and not by the defendants. Moreover, there is a receipt signed by the defendants for one-hundred forty dollars ($140.00), "* * * cash payment on house and lot." included in the record. But we do not think these memoranda take the place of the agreement or memorandum required by Code, 36-1-3.

It is to be noted however, that the alleged contract as contended for by the defendants, covered in part household goods. But that is only a part of the contract. We must look to the contract as a whole, rather than its integral parts. We therefore are of the opinion that Code, 36-1-3 renders the contract claimed by defendants as well as by the plaintiff, as being within Code, 36-1-3 and therefore unenforceable.

The principle applicable to voidable contracts is well settled. If a vendee in such contract is in default of the performance, he cannot recover " * * * money voluntarily paid by him to the vendor, when the latter is able and stands ready and willing, on payment of the balance of purchase money, to execute the contract on his part, by making, executing and delivering to the vendee a good and sufficient deed for the property?" *Cook* v. *Griffith*, 76 W. Va. 799, 801, 86 S. E. 879; *Summers* v. *Hively*, *supra*. See *Stewart* v. *Elkins*, 101 W. Va. 557, 133 S. E. 125; *Worthington* v. *Collins's Adm'r.*, 39 W. Va. 406, 19 S. E. 527. Where the vendor is in default in the performance of a contract, the vendee may recover upon an implied contract as for money had and received by the vendor for the use of the vendee. *Cook* v. *Griffith*, *supra*. See 59 A. L. R. Annotations, 189; 102 A. L. R. Annota-

tions, 852; 134 A. L. R. Annotations, 1064, where the cases are collated. The two rules above stated seem to have been generally approved and accepted in other jurisdictions.

As a corollary to the two rules above mentioned, if both parties are at fault, so as to show a mutual abandonment of the original contract, it would follow that the vendee may recover money voluntarily paid by him. 102 A. L. R. Annotation, 890.

Or treating the defendants' testimony as establishing the contract according to their contentions, there is an abrogation of the original contract by requiring the payment of the additional $300.00; in which event we have a different contract and a unilateral recission of the old. See *Marsh* v. *Despard,* 56 W. Va. 132, 49 S. E. 24; *Poteet* v. *Imboden,* 77 W. Va. 570, 88 S. E. 1024. If the old contract was so rescinded, the plaintiff may recover the money she paid under it. *Bier* v. *Smith,* 25 W. Va. 830.

This record clearly shows that there was misunderstanding as to the old contract, relative to its subject matter and price, or that false testimony was given by plaintiff or defendants. The testimony given by them and adduced by their witnesses, is in sharp conflict as to the purchase price and subject matter of the contract. We do not overlook the fact that the jury seem to have found that the defendants' version is true, but that finding did not solve the problem here presented. If the plaintiff has misrepresented the contract and refused to pay the agreed purchase price, she is at fault; and in the absence of fault on the part of the defendants, she could not recover the money voluntarily paid by her. The plaintiff, in her testimony, states that at least prior to the bringing of this action, she was willing to pay the difference between $2300.00 and $3500.00, the purchase price of the house and land, as agreed by her.

On the contrary, defendants, in their testimony, state that they are willing to accept the difference between the

sum of $2300.00 and the purchase price contended for by them, of $5500.00, subject to the qualifications immediately following. In addition, the male defendant testified that he was willing to make and deliver to plaintiff an apt and proper deed, upon the payment by her of $300.00, additional, making a total of $5800.00 for the purchase price of the house, land and furniture. Such attitude, on the part of the defendants, renders the vendor in default of performance of the contract as contended for by them.

It seems to us that this record shows that both the vendors and vendee are in default of the performance of the contract for the sale of the real estate and personal property, since there is no willingness shown on the part of defendants to convey the furniture to the plaintiff for the contract price of $5500.00, admittedly agreed to by them. In that state of record, the plaintiff was entitled to recover the money voluntarily paid by her.

We have refrained from referring to reports made by the jury as verdicts. The first report made by the jury constitutes a verdict by it for the defendants in the sum of $3200.00. That report was certain on its face. Notwithstanding that the first report may have been technically irregular as a verdict, the jury should not have been sent back by the trial court for further consideration of its verdict. Nevertheless, they were sent to their room for further consideration and made a report which the court received as a verdict and which is inconsistent with their first report. The last report should not have been received as a verdict. *State* v. *Easley,* 129 W. Va. 410, 40 S. E. 2d 827. By the second report, the plaintiff was deprived of any credit on the purchase price of the property and that finding settled nothing. As this court said in *State* v. *Easley, supra,* "The foregoing expressions in disapproval of the actions detailed above, are not, however, to be understood or considered as impairing or limiting the power and the authority of the judge of

any trial court, before discharging the jury, to correct an irregularity, eliminate any surplusage, or amend the form of a verdict of a jury upon the trial of any case, when such action is necessary or proper, without changing its substance, finding or effect." But, in the instant case, the first report of the jury is wholly inconsistent with its second report.

Notwithstanding that the first report by the jury should have been received as a verdict, it could not stand, for the reason that the jury attempted to enforce the contract as contended for by the defendants and allows a recovery on an unenforceable contract. The first report of the jury should have been received by the court and thereafter, set aside for that reason.

The defendants were not entitled to a verdict allowing them to retain the money paid by them, because by their own. undisputed testimony, it appears that they have added to the contract by increasing the purchase price of $5500.00.

In the state of the record here shown, the peremptory instruction in favor of the plaintiff should have been given, and it was error to refuse it.

We refrain from discussing the Instructions Number 2 and 3, tendered by the plaintiff and given by the court, and likewise refrain from discussing Instructions Number A and B, proffered by the defendants and refused by the court. It may not be amiss however, to discuss Instruction Number C tendered by defendants and given by the court. Instruction Number C was erroneous in that there was no evidence to show that the defendants were "ready, willing and able" to fulfill the provisions of their contract with the plaintiff. The male defendant's testimony on the contrary shows that they were not "ready, willing and able" to fulfill the contract they alleged the plaintiff had made with them. "The giving of instructions, having no basis or foundation in. the evidence in the case in which they are given, is prejudicial

and constitutes reversible error." *Kuykendall* v. *Fisher*, 61 W. Va. 87, 56 S. E. 48.

Since for reasons stated above, the plaintiff must be awarded a new trial, we refrain from further discussing the respective rights of the parties to this action.

For the reasons stated, the judgment of the Circuit Court of Raleigh County is reversed, the verdict received by the court is set aside, and a new trial awarded plaintiff.

> *Judgment reversed; verdict*
> *set aside; new trial awarded.*