G. C. CLAYTON *et al. v.* HARRY NICELY *et al.*

(No. 8133)

Submitted September 24, 1935. Decided October 1, 1935.

*W. H. Carter,* for plaintiffs in error.
*E. B. Pennybacker,* for defendants in error.

WOODS, JUDGE:

G. C. Clayton and W. F. Johnson instituted this proceeding by notice of motion to recover money alleged to be due and owing under contract, dated October 7, 1929, whereby Harry Nicely and George C. Ross promised, upon the termination of said contract, to pay to plaintiffs the actual cost of materials and labor entering into any unsold building erected by the latter under and by virtue of said contract.

Nicely and Ross, on October 7, 1929, owned twenty-eight lots in what is known as Laurel Terrace Addition to the City of Parkersburg, subject to a deed of trust in favor of Farmers Building and Loan Association. Clayton and Johnson, who were in the real estate business, on the day aforesaid entered into a two-year agreement of purchase, the controlling terms of which were: (a) that Clayton and Johnson would at their own expense erect and build fourteen dwelling houses, one upon each of the fourteen units into which the lots were grouped, construction to begin without delay, and upon completion and sale of the first dwelling, a second to be begun, etc., and that no liability would be contracted incident to such construction the effect of which would bind Nicely and Ross or the unit upon which said dwelling was constructed; (b) that purchase price for the lots was $17,500; that Clayton and Johnson executed their note therefor, payable on demand; that upon payment of said note, or of a one-fourteenth part thereof, to-wit, $1,250, Nicely and Ross would convey free of encumbrances the whole, or any unit thereof; (c) that all of purchase money should be paid on or before two years from date of agreement; that "in the event the full purchase price for said notes is not paid within the period aforesaid, then at the option of the parties hereto. (1) This contract may be cancelled as of this date, and thereafter shall be of no binding force or effect on the parties hereto, and all lots which shall then have not been conveyed according to the terms and provisions hereof shall revert to and become the sole property of the parties of the first part; or (2) this contract may continue according to the terms and provisions hereof except that thereafter such part of the purchase money shall remain unpaid shall bear interest at the rate of 6% per annum payable quarterly." Then followed a sentence that "If at the time of the termination of this contract any dwelling may be under construction or completed but unsold, the parties of the first part [Nicely and Ross] shall pay the parties of the second part [Clayton and Johnson] the actual cost of material and labor entering into such unsold building."

Plaintiffs proceeded with construction promptly. They were, however, unable to make sale of the house and unit

upon which it was located, owing, as they claim, to the failure of defendants to carry out certain other details in the contract with reference to water, cinder walks, and such. So, a short time prior to October 7, 1931, the end of the two-year period, the plaintiffs desiring to terminate the contract, delivered a written notice, which was addressed to the defendants, to Nicely. This called attention to the fact that the contract may be cancelled under conditions therein described in the event the full purchase price for said lots was not paid within two years from its date, and concluded: "This is to give you notice that the undersigned elects to cancel said contract as of October 7, 1931, in accordance with and subject to the terms and conditions of said contract."

It is the contention of the plaintiffs, and their evidence tends to support the same, that Harry Nicely, acting for himself and as agent for George C. Ross, assented to the termination of said contract, and at various times thereafter acknowledged their liability thereunder for the materials and labor going into the building. This acknowledged liability is supported by the testimony of several materialmen to the effect that Nicely had agreed to pay them for materials which they had furnished Clayton and Johnson. The property in question was sold under the prior deed of trust sometime after the bringing of this action.

Defendants took the position throughout the case that by virtue of provisions heretofore set out in "(c)" all the purchase money was to have been paid on or before two years from the date of contract, unless all the parties to the contract mutually agreed to extend the contract, and, further, that liability for such purchase money attached, in the absence of an allegation, and a showing, of such extension. Such construction is not warranted by the terms of the contract. The $17,500 demand note bore a notation that it was to be paid according to the contract. The scheme was to permit payment as dwellings were sold. To hold that the money was due is to hold an out and out sale, and to ignore the provision regarding the liability of defendants for the unsold house. The contract contemplated a reverter of the property to defendants, and that they pay for its enhanced value. So, instructions

Nos. 1, 2, 3 and 4 which considered the purchase price due and owing were properly refused.

The court, over defendants' objection, gave the two instructions offered by the plaintiffs. The *first* told the jury, in effect, that the contract might be concluded, ended or terminated at the option of the parties; and the *second,* that inasmuch as there was no method of expressing said option in the contract, the jury might consider the conversation had between the parties, their actions and conduct and all of the facts and circumstances offered as evidence in determining whether or not such option had been exercised. The construction placed upon the contract by these instructions were, to say the least, very favorable to the defendants.

The judgment of the circuit court must be affirmed.

*Affirmed.*